**CV 15            1236**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

WILLIAM JOHNSON,

                        Plaintiff,

**COMPLAINT**

-against-

**Jury Trial Demanded**

THE CITY OF NEW YORK; BRUCE CEPARANO;
and EDUARDO OCHOA,

                        Defendants.

---------------------------------------------------------------x

Plaintiff WILLIAM JOHNSON, by his attorney, Robert T. Perry, respectfully alleges as follows:

**GOLD, M.J**

## NATURE OF ACTION

1. Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of his civil rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

3. The Court has jurisdiction over plaintiff's federal law claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to plaintiff's claims occurred in this district.

## JURY DEMAND

5. Plaintiff respectfully demands trial by jury of all issues properly triable thereby pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff WILLIAM JOHNSON is a resident of Staten Island, New York.

7. Defendant THE CITY OF NEW YORK ("the City") is, and was at all times relevant herein, a municipal corporation duly organized and existing under the laws of the State of New York. The City maintains the New York City Police Department ("NYPD"), which acts as the City's agent in the area of law enforcement and for which the City is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers, as said risks attach to the public consumers of the services provided by the NYPD.

8. Defendant BRUCE CEPARANO is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Ceparano was a sergeant assigned to the 120th Precinct in Brooklyn, New York. Defendant Ceparano is being sued in his individual capacity.

9. Defendant EDUARDO OCHOA is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Ochoa was a police officer assigned to the 120th Precinct in Brooklyn, New York. Defendant Ochoa is being sued in his individual capacity.

10. At all relevant times herein, the individual defendants acted under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

11. At all relevant times herein, the individual defendants acted within the scope of their employment with the City and the NYPD.

## STATEMENT OF FACTS

12. On Saturday, March 10, 2012, at about 12:50 a.m., plaintiff was driving in the vicinity of Tompkins Avenue and Tompkins Street in Staten Island, New York.

13. Plaintiff was operating a used 2004 Lexus which he had lawfully purchased from a dealer in Hillside, New Jersey less than two weeks earlier, on February 27, 2012.

14. At the time of purchase, the dealer issued plaintiff a 20-day Non-Resident Temporary Registration and Marker after plaintiff provided proof that he had full insurance coverage and a valid driver's license.

15. By its terms, the 20-day Non-Resident Temporary Registration and Marker was valid until March 18, 2012.

16. The 20-day Non-Resident Temporary Registration and Marker was affixed to the rear windshield of the 2004 Lexus, where it remained conspicuously displayed on Saturday, March 10, 2012, at about 12:50 a.m.

17. On the latter date and at the latter time, plaintiff was operating the vehicle in compliance with all traffic rules and regulations.

18. Plaintiff nonetheless was stopped by defendants Ceparano and Ochoa.

19. Even though all of plaintiff's documents were in proper order, even though he had a valid temporary registration and marker affixed to the rear windshield of his car, and even though he had committed no traffic infraction, defendants Ceparano and Ochoa arrested plaintiff.

20. Defendants Ceparano and Ochoa lacked any justification for arresting plaintiff, as there was no probable cause to believe that plaintiff had committed any crime or offense.

21. At the time of plaintiff's arrest, defendants Ceparano and Ochoa ripped the 20-day Non-Resident Temporary Registration and Marker from the rear windshield of plaintiff's car.

22. Plaintiff was taken to the 120th Precinct and later to Central Booking in Staten Island.

23. On Saturday, March 10, 2012, plaintiff was arraigned in Staten Island Criminal Court on a charge of criminal possession of a forged instrument in the third degree based on a complaint sworn to by defendant Ochoa falsely alleging that he found a "forged New Jersey Temporary Tag" affixed to the rear windshield of plaintiff's car.

24. Plaintiff pleaded not guilty, as he had committed no crime or offense.

25. Plaintiff was released on his own recognizance.

26. Plaintiff thereafter had to make three court appearances over the next seven months to defend himself against the false charge.

27. On October 10, 2012, the charge against plaintiff was dismissed in the furtherance of justice due to the weakness of the merits of the criminal case.

28. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City and the NYPD, including, without limitation, the inadequate screening, hiring, retaining, training, and supervision of their employees, and due to a custom, policy, and/or practice of: disproportionately stopping, detaining, and falsely arresting minorities; manufacturing false evidence against individuals; arresting innocent individuals in order to meet "productivity goals" (i.e., arrest quotas); arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or engaging in a practice of falsification in an attempt to justify the false arrest.

29. The above-described incident is not an isolated occurrence. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York, as well as in New York State courts. The City and NYPD are thus aware (from said lawsuits, as well as from notices of claims filed with the City's Office of Comptroller and complaints filed with the NYPD's Internal Affairs Bureau and the City's Civilian Complaint Review Board) that many NYPD officers: disproportionately stop, detain, and falsely arrest minorities; manufacture false evidence against individuals; arrest innocent individuals in order to meet "productivity goals" (i.e. arrest quotas); arrest individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or engage in a practice of falsification in an attempt to justify the false arrest.

30. In a civil rights action filed in this Court involving false allegations of involvement in a narcotics transaction by NYPD officers, the Honorable Jack B. Weinstein observed:

> Informal inquiry by the court and among judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. . . . [T]here is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or police by the City approving illegal conduct of the kind now charged.

*Colon v. City of New York, et. al.*, No. 2009 Civ. 08 (JBW), 2009 WL 4263362, at *2 (E.D.N.Y.).

31. The existence of the aforesaid unconstitutional customs and policies may further be inferred from the acknowledgment by former NYPD Deputy Commissioner Paul J. Brown, as

5

reported by the media on January 20, 2006, that NYPD commanders are permitted to set "productivity goals."

32. The City and NYPD are further aware that such improper training has often resulted in a deprivation of civil rights. Despite such notice, the City and NYPD have failed to take corrective action. This failure caused defendants Ceparano and Ochoa to violate plaintiff's civil rights.

33. Upon information and belief, the City and the NYPD were aware, prior to the incident, that defendants Ceparano and Ochoa lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. Despite such notice, the City and NYPD have retained defendants Ceparano and Ochoa and failed to adequately train and supervise them.

34. As a result of the incident described above, plaintiff sustained, *inter alia*, physical injuries, emotional distress, mental anguish, shock, fright, apprehension, embarrassment, humiliation, loss of liberty, physical restraints, and violation of his constitutional rights.

## FIRST CLAIM FOR RELIEF

### (False Arrest Claim Under 42 U.S.C. § 1983)

35. Plaintiff repeats and realleges paragraphs "1" through "34" with the same force and effect as if they were fully set forth herein.

36. Defendants, acting in concert and within the scope of their authority, arrested and caused plaintiff to be imprisoned without probable cause to believe that plaintiff had committed any crime or offense, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## SECOND CLAIM FOR RELIEF

### (Malicious Prosecution Claim Under 42 U.S.C. § 1983)

37. Plaintiff repeats and realleges paragraphs "1" through "36" with the same force and effect as if they were fully set forth herein.

38. Defendants, acting in concert and within the scope of their authority, caused plaintiff to be prosecuted with malice and without probable cause -- a prosecution that terminated in plaintiff's favor -- in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## THIRD CLAIM FOR RELIEF

### (Denial of a Right to Fair Trial Claim Under 42 U.S.C. § 1983)

39. Plaintiff repeats and realleges paragraphs "1" through "38" with the same force and effect as if they were fully set forth herein.

40. Defendants created false, fabricated evidence against plaintiff and used that evidence against plaintiff in legal proceedings. As a result, plaintiff suffered a violation of his constitutional right to a fair trial, as guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

## FOURTH CLAIM FOR RELIEF

### (Failure to Intervene Claim Under 42 U.S.C. § 1983)

41. Plaintiff repeats and realleges paragraphs "1" through "40" with the same force and effect as if they were fully set forth herein.

42. Each individual defendant had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in that defendant's presence by the other defendant, but failed to intervene to prevent the unlawful conduct, in violation of each

plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## FIFTH CLAIM FOR RELIEF

### (Municipal Liability Claim Under 42 U.S.C. § 1983)

43. Plaintiff repeats and realleges paragraphs "1" through "42" with the same force and effect as if they were fully set forth herein.

44. Defendants, singly and collectively, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States. The aforementioned customs, policies, usages, practices, procedures and rules of the NYPD included, but were not limited to: disproportionately stopping, detaining, and falsely arresting minorities based on insufficient and/or constitutionally suspect criteria; manufacturing false evidence; arresting innocent individuals in order to meet "productivity goals" (i.e. arrest quotas); arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or engaging in a practice of falsification in an attempt to justify the false arrest.

45. In addition, the City and the NYPD engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training and supervising its employees which was the moving force behind the violation of plaintiff's rights as described herein. As a result of the failure of the City and the NYPD to properly recruit, screen, train, discipline, and supervise its officers, including defendants Ceparano and Ochoa, the City and NYPD have tacitly authorized, ratified, and have been deliberately indifferent to the acts and conduct complained of herein.

46. The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD constitute deliberate indifference to plaintiff's safety, well-being and constitutional rights.

47. The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

48. The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD were the moving force behind the constitutional violations suffered by plaintiff as alleged herein.

49. As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD, plaintiff was unlawfully arrested.

50. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff's constitutional rights.

51. All of the foregoing acts by defendants deprived plaintiff of federally protected rights, including, but not limited to, the right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands the following relief jointly and severally against all the defendants:

    (A)    Compensatory damages in an amount to be determined at trial;

    (B)    Punitive damages in an amount to be determined at trial;

    (C)    Reasonable attorney's fees and costs of this litigation; and

    (D)    Such other relief as this Court deems just and proper.

Dated: Brooklyn, New York
March 10, 2015

Respectfully submitted,

*Robert T. Perry*
ROBERT T. PERRY (RP-1199)
45 Main Street, Suite 230
Brooklyn, New York 11201
(212) 219-9410
*Attorney for Plaintiff*